[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13269

Non-Argument Calendar

_____

STUART KESSLER,
PAMELA KESSLER,

                                        Plaintiffs-Appellants,

*versus*

CITY OF KEY WEST,
RONALD RAMSINGH,
GEORGE WALLACE,
JAMES K. SCHOLL,
City Manager,
GREG VELIZ,
Assistant City Manager, et al.,

Defendants-Appellees,


DOUGLAS N. HIGGINS INC.,
a Michigan Corporation, et al.,


Defendants.


—————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 4:19-cv-10030-JEM

—————————————

Before ROSENBAUM, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Pamela and Stuart Kessler, proceeding *pro se*, appeal the district court's order granting summary judgment in favor of the City of Key West on their claim alleging an unconstitutional taking of their leasehold interest under 42 U.S.C. § 1983. After careful review, we affirm.

**I.**

The relevant facts are largely undisputed. For more than a decade, the Kesslers' primary residence was a floating home docked at a marina operated by the City in a community of about

100 floating homes.  The Kesslers leased their spot at the marina—a "boat slip"—from the City.

The record shows the Kesslers signed a written, 12-month lease for the boat slip starting on October 1, 2007.  After the original term expired in September 2008, the Kesslers continued to pay monthly rent to the City for use of the boat slip.

As relevant here, the lease agreement stated that, if the City "determine[d] not to renew the tenancy, it shall provide [the Kesslers] both thirty (30) days' notice and the option of a hearing before the Port Advisory Board."  In January 2009, however, the City adopted an ordinance to dissolve the Port Advisory Board, finding that it "no longer serve[d] a useful purpose."

In 2016, the City initiated a code enforcement action against the Kesslers, citing flotation devices that were loosely secured to their floating home.  The City later tried to evict the Kesslers based on the alleged code violation.  The Kesslers challenged these matters in court, and the City ultimately dismissed the eviction proceeding voluntarily in January 2018.

Meanwhile, Hurricane Irma struck the Lower Keys and Key West in September 2017.  The Kesslers' floating home initially survived the storm with minimal damage.  But a few months later, in December 2017, a large piece of floating debris struck their home.  Unfortunately, as a result, the home sank in its dock.

On January 23, 2018, after dismissing the eviction case, the City notified the Kesslers by letter that it would not renew their month-to-month lease, effective March 1, 2018.  The notice of non-

renewal further advised that the Kesslers' lease provided "the option of requesting a hearing before the Port Advisory Board," but that, "[s]ince the Board has been disbanded," any hearing requested would be conducted by the City Manager.  The Kesslers requested a hearing, which was scheduled for February 22, 2018.  After the hearing, the City Manager issued a decision terminating the Kesslers' tenancy, effective March 1, 2018.  Later that year, the City leased the boat slip to another tenant.

## II.

In February 2019, the Kesslers sued the City in federal court under 42 U.S.C. § 1983.[1]  They claimed that the City had violated their rights to procedural due process, substantive due process, and equal protection, and had taken their leasehold interest without providing just compensation.

According to the Kesslers' second amended complaint, they had a property interest in the "continued renewability of their lease" absent a material breach of the lease as found by the Port Authority Board or equivalent body.  As grounds for that view, the Kesslers cited not only the lease itself, but also "a series of interlocal agreements and prior [c]ourt settlements," as well as an "active market for the sale and assignment of slip leases, which the City participates in by collecting 5% of the sale price," typically between $50,000 and $100,000.

---

[1] The Kesslers also sued various city employees, but they have not appealed the resolution of those claims, so we do not address them further.

The district court granted the City's motion to dismiss for failure to state a claim and failure to exhaust state remedies. On appeal, we affirmed the dismissal of the Kesslers' procedural-due-process, substantive-due-process, and equal-protection claims. *Kessler v. City of Key West*, No. 21-11069, 2022 WL 590892, *3–4 (11th Cir. 2022). But we vacated and remanded for further proceedings on their takings claim, which no longer requires state exhaustion. *See Knick v. Twp. of Scott, Penn.*, 588 U.S. 180, 190 (2019) ("The Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner.").

After discovery, the district court granted the City's motion for summary judgment on the remaining takings claim. The court found that, following the expiration of the written lease's 12-month term, the "lease turned into a month-to-month tenancy," which the court recognized as a compensable property interest under Florida Law. Nonetheless, the court reasoned that the City provided legally sufficient notice of non-renewal, and that the provision requiring a hearing before the Port Authority Board was no longer applicable since the Board had been dissolved several years earlier. Finally, the court found that the Kesslers provided no evidence that their property interest was protected by more than just the lease agreement. The Kesslers moved for reconsideration, but the court denied the motion, and this appeal followed.

**III.**

We review the grant of summary judgment de novo. *Anthony v. Georgia*, 69 F.4th 796, 804 (11th Cir. 2023). Summary judgment is appropriate if there is no genuine dispute of material fact, viewing evidence in the light most favorable to the nonmovant. *Id.*

The Takings Clause—applicable to localities through the Fourteenth Amendment—prohibits the taking of private property for public use without just compensation. *Ward v. Downtown Dev. Auth.*, 786 F.2d 1526, 1528–29 (11th Cir. 1986). "The Takings Clause protects private property; it does not create it." *Givens v. Ala. Dep't of Corr.*, 381 F.3d 1064, 1066 (11th Cir. 2004). A person's claim to "property" can be secured by "such rules or mutually explicit understandings that support his claim of entitlement," including state law or a written contract. *Perry v. Sindermann*, 408 U.S. 593, 601 (1972). Nevertheless, an enforceable contract with a state or local government entity, standing alone, "does not give rise to a constitutionally protected property interest." *Key West Harbour Dev. Corp. v. Key West*, 987 F.2d 723, 728 (11th Cir. 1993).

We have recognized that, under Florida law, "any tenancy, no matter the duration, is a property interest that can be the subject of a compensable taking." *Ward*, 786 F.2d at 1529. Ordinarily, "legally sufficient notice to vacate" terminates that interest "as of the end of the notice period." *Id.* In *Ward*, however, we concluded that legally sufficient notice was not enough when the landlord was a state entity whose power to displace tenants was "circumscribed by conditions set forth in the legislative grant of its authority." *Id.* Thus, we concluded that the tenants' property interest in their

24-13269                 Opinion of the Court                    7

tenancy "continued so long as these conditions were not met." *Id.*; *see also Jeffries v. Ga. Residential Fin. Auth.*, 678 F.2d 919, 927 (11th Cir. 1982) (holding that tenants retained a protected property interest in their leases despite having received legally sufficient notice to terminate because the state entity "had the [statutory] authority to evict only for cause").

As we've noted, the lease agreement stated that, if the City "determine[d] not to renew the tenancy, it shall provide [the Kesslers] both thirty (30) days' notice and the option of a hearing before the Port Advisory Board."  The City maintains that no property interest was taken from the Kesslers because it provided legally sufficient notice to terminate the tenancy, which the City describes as a month-to-month tenancy at will.  In the City's view, the Port Advisory provision was inapplicable to the Kesslers' continued tenancy once the written lease expired and the Board was dissolved.

The Kesslers' respond that the lease terms remained in full effect after the expiration of the term in the written lease.  And they assert that the City failed to comply with a "condition precedent" to non-renewal—similar to the landlord in *Ward*—by providing a hearing before the Port Authority or an equivalent citizens' board.  They make no claim that the City violated the provision requiring thirty days' notice.[2]  Thus, the Kesslers' argument on appeal hinges

---

[2] The City now contends that, because the Kesslers were month-to-month tenants at will, only fifteen days' notice was required.  *See* Fla. Stat. § 83.03(3) (providing that nonresidential month-to-month tenancies may be terminated by "giving not less than 15 days' notice prior to the end of any monthly

8                    Opinion of the Court                    24-13269

on whether the hearing provision remained enforceable after the written-lease term expired.

We assume without deciding that a condition precedent in a lease is equivalent to the statutory limitations at issue in *Ward* and *Jeffries*. *See Ward*, 786 F.2d at 1529; *Jeffries*, 678 F.2d at 927. We further assume without deciding that the Port Authority provision was a condition precedent to non-renewal of the tenancy.

Still, the Kesslers have not shown that the City's actions were ineffective to terminate their property interest as of March 1, 2018. The general rule in Florida is that, absent a controlling provision in the original agreement or a new arrangement (which the parties have not identified), "the tenancy arising from the tenants holding over with the consent of the landlord is presumed to be upon the same covenants and terms as the original lease *so far as they are applicable to the new tenancy*." *Wingert v. Prince*, 123 So. 2d 277, 279 (Fla. Dist. Ct. App. 1960) (emphasis added); *Rosamond v. Mann*, 80 So. 2d 317 (Fla. 1955)). So while we generally presume that the terms of the written lease carried over to the Kesslers' continued tenancy following the expiration of the original 12-month term, that presumption has been rebutted with regard to the Port Authority provision. The record is clear that the Port Authority ceased to exist as of 2009 and that no comparable entity took its place. Thus, by the time of the events at issue in this case, several years later, the provision requiring review by the Port Authority,

_____

period"). In any case, the record shows that the City gave more than 30 days' notice, as provided in the written lease.

which no longer existed, simply was not applicable to the Kesslers' tenancy. *See Wingert*, 123 So. 2d at 279.

To the extent a hearing was still required, the City fulfilled that condition by providing an alternative hearing before the City Manager. The Kesslers maintain that any hearing required a finding of "cause" for non-renewal. But they concede that no standard of review by the Port Authority was articulated in the lease, nor do they identify such a standard in the provisions that governed the Port Authority before its dissolution. They also did not offer any evidence, as opposed to mere assertions, to support implying a "cause" requirement for non-renewal, or to otherwise show that their continued tenancy was protected by more than just the lease. Accordingly, the absence of a finding of "cause" for non-renewal does not render ineffective the City's non-renewal decision.[3]

For these reasons, we affirm the grant of summary judgment on the Kesslers' takings claim.

**AFFIRMED.**

---

[3] The Kesslers also contend that the City was required to obtain a writ of possession through an eviction hearing, but their arguments in this regard sound in procedural due process. And we have already affirmed the dismissal of the Kesslers' procedural-due-process claim.